**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

| | | |
|---|---|---|
| **PROCON ANALYTICS, LLC**, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:19-cv-201 |
| v. | ) | |
| | ) | JURY DEMAND |
| **SPIREON, INC.**, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Before the Court is Plaintiff Procon Analytics, LLC's ("Procon") Motion for Judgment on the Pleadings ("§ 101 Motion"), filed on September 9, 2021. (ECF No. 40.) For the following reasons, the Court **GRANTS** the motion.

**I. BACKGROUND**

**A. Factual Background**

Plaintiff Procon is a Tennessee limited liability company with a principal place of business in Irvine, California (ECF No. 9 ¶ 1), and Defendant Spireon, Inc. ("Spireon") is a Tennessee corporation with offices in Irvine, California and Knoxville, Tennessee (ECF No. 9 ¶ 2). Both parties are competitors in the connected car and vehicle management fields. Procon "offers a suite of connected-car products and services, including vehicle inventory management and service retention products, fleet-management tools, and other aftermarket solutions packaged for automotive retailers." These products include both hardware and software solutions. (ECF No. 9 ¶¶ 22–26.) One such product is a software that helps new car automotive dealerships manage their inventory. (Id. ¶ 23.) Another product that Procon sells is a device that connects to the "on-board

1

diagnostics (OBDII) port (or a panel attached thereto) of a vehicle." (Id. ¶ 25.) This device is enabled to "transmit information to the cloud over a wireless network." (Id.) Similarly, Spireon purports to be an "industry leader in Mobile Resource Management, offering lot management solutions to [the] automotive dealer industry." (ECF No. 1-1 at PageID 9.) Spireon asserts that it is a "leader in the field of connected vehicle intelligence" and sells products that "facilitate[] the tracking, management, and protection of vehicles in various commercial applications and industries." (ECF No. 10 at PageID 197.) It is Spireon's contention that Procon continues "making, selling, and offering for sale products and services for managing vehicle inventory for dealerships that infringe on certain claims of the '598 Patent[.]" (ECF No. 10 at PageID 198.)

U.S. Patent No. 10,089,598 (the "'598 Patent") is entitled "Methods and Apparatus for Monitoring and Control of Electronic Devices" and primarily discloses a method for machine to machine telemetry. The patent defines "telemetry" as "a technology that allows the remote measurement and reporting of information of interest to the system designer or operator." ('598 Patent, col. 1 l. 19–21.)

At its heart, the '598 Patent discloses an "inventory management system" that "may be configured to provide machine-to-machine network connectivity" and "may be used in conjunction with a location device configured to transmit a vehicle identification number (VIN) and a device identifier of the location device." '598 Patent at Abstract. The technology of the '598 Patent boils down to methods of communicating and gathering information from vehicles. As described in the abstract of the patent, "the inventory management system may be configured to: (1) track whether the location device is located within a predetermined perimeter; (2) provide current inventory and ownership status associated [with] the location device; and/or (3) place the location device in a sleep and/or passive state with periodic check-ins." '598 Patent at Abstract. The disclosure and

2

claims also provide additional capabilities, such as receiving signals if the car's battery is depleted or storing additional information about the vehicle in the data base. (See generally, '598 Patent col. 15, l. 28–32; col. 16, l. 43–48.)

In this case, all of the independent claims begin with "[a] method for managing a vehicle inventory." ('598 Patent, cols. 27, 28.) Claim 1 is the basis for most discussion on claim terms and provides as follows:

1. A method for managing a vehicle inventory for a dealer implemented by a computer having a processor and a memory, the method comprising:

> while a location is not communicatively coupled with a vehicle, associating the location device with a dealer's group of available location devices in the memory, wherein the dealer's group of available location devices comprises location devices owned by the dealer that are not coupled with any vehicle;

> communicatively coupling the location device with a vehicle;

> in response to the location device becoming communicatively coupled with the vehicle, the location device transmitting a connection notice over a network, the connection notice comprising a vehicle identifier and a location device identifier;

> receiving, by the computer, the connection notice from the location device over the network;

> in response to the connection notice received by the computer, the processor:

>> associating the location device identifier with the vehicle identifier in the memory; and

>> disassociating the location device from the dealer's group of available location devices in the memory; and

>> receiving, by the computer, current location information from the location device.

## B. Procedural Background

On April 2, 2019, Procon was served with a letter from Defendant Spireon, Inc. ("Spireon"), accusing it of infringement of the '598 Patent. (ECF No. 1-1.) On April 25, 2019, Spireon followed up its first letter with a cease and desist demand with respect to any products that allegedly infringe the '598 Patent. (ECF No. 1-2.) Following the second cease and desist demand, Procon filed a Petition requesting Post-Grant Review of Claims 1–14 of the '598 Patent on May

3

30, 2019. (ECF No. 12 ¶ 5.) Additionally, on June 3, 2019, Procon brought this claim for declaratory judgment of noninfringement and invalidity of the '598 Patent, and filed an Amended Complaint on August 6, 2019. (ECF No. 9.) Spireon filed an Answer and Counterclaims on August 26, 2019. (ECF No. 10.) On November 22, 2019, the Patent Trial and Appeal Board ("PTAB") declined to institute proceedings against the challenged claims based on the plain and ordinary meaning of the claim terms. (ECF No. 17-1.) Plaintiff filed a Motion for Judgment on the Pleadings ("§ 101 Motion") on September 9, 2020. (ECF No. 40.) Spireon filed a Response in Opposition on September 30, 2020. (ECF No. 45.) Procon filed a Reply to Spireon's Response on October 7, 2020. Procon filed a Supplement to its § 101 Motion on February 16, 2021 (ECF No. 63), to which Spireon filed a Response in Opposition on February 23, 2021. (ECF No. 65.) Following briefing from the parties and a Markman hearing, the Court also entered its Claim Construction Order on February 19, 2021. (ECF No. 64.) The Court held a hearing on the pending § 101 Motion on March 2, 2021.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed –- but early enough not to delay trial –- a party may move for judgment on the pleadings." Since the grant or denial of judgment on the pleadings is not uniquely a patent issue, the law of the regional circuit is applied. See Allergan, Inc. v. Athena Cosmetics, Inc., 640 F.3d 1377, 1380 (Fed. Cir. 2011).

A motion for judgment on the pleadings under Rule 12(c) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 295 (6th Cir. 2008) (citing Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp., 399 F.3d 692, 697 (6th Cir. 2005)); see also Lindsay v. Yates, 498 F.3d 434, 437 n.5

(6th Cir. 2007). Under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." DirecTV, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). The court, however, "need not accept as true legal conclusions or unwarranted factual inferences." Id. (quoting Gregory v. Shelby Cnty., 220 F.3d 433, 446 (6th Cir. 2000)). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." Bishop v. Lucent Techs., Inc., 520 F.3d 516, 519 (6th Cir. 2008).

A Rule 12(c) motion that seeks a determination of invalidity must be supported by clear and convincing evidence appearing in the patent. Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC, 78 F. Supp. 3d 884, 887 (N.D. Ill. 2015) (citing Microsoft Corp. v. i4i Ltd. P'ship, 131 S. Ct. 2238, 2242 (2011)), aff'd per curiam, 2015 WL 9461707 (Dec. 28, 2015). "A Rule 12(c) motion is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" Stafford v. Jewelers Mut. Ins. Co., 554 F. App'x 360, 370 (6th Cir. 2014) (quoting Tucker v. Middleburg-Legacy Place, LLC, 539 F.3d 545, 549 (6th Cir. 2008)).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "In ruling on a motion for judgment on the pleadings, . . . the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint or that are central to plaintiff's claims and (2) matters of which a court may take judicial notice." Wrobel v. Huron-Clinton Metro. Auth., No. 13-cv-13168, 2014 WL 1460305, at *6 (E.D. Mich. Apr. 15, 2014) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)); see also KRS Int'l Co. v. Delphi Auto. Sys., LLC, 523 F. App'x 357, 359 (6th Cir. 2013)

("[A] court 'may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein,' without converting the motion to one for summary judgment." (quoting Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008))).  In addition, "documents 'integral' to the complaint" may be relied upon, "even if [they are] not attached or incorporated by reference . . . [when] there exist no material disputed issues of fact regarding the relevance of the document." Mediacom Se. LLC v. BellSouth Telecomms., Inc., 672 F.3d 396, 400 (6th Cir. 2012) (citations and internal quotation marks omitted)).

## III.    ANALYSIS

Thirty-five U.S.C. § 101 sets forth that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." "Eligibility under 35 U.S.C. § 101 is a question of law, based on underlying facts." SAP America, Inc. v. InvestPic, LLC, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (internal citations omitted).  "Like other legal questions based on underlying facts, this question may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." Id.; see also generally, Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC, 874 F.3d 1329, 1341 (Fed. Cir. 2017) (affirming district court's finding of §101 ineligibility at 12(c) stage); WhitServe LLC v. Donuts, Inc., 809 F. App'x 929, 935 (Fed. Cir. 2020) ("But we have repeatedly made clear that 'patent eligibility can be determined at the Rule 12(b)(6) stage' if there are no plausible factual allegations to impede such a resolution.") (internal citations omitted);

Aatrix Software, Inc. v. Green Shades Software, Inc., 882 F.3d 1121, 1125 (Fed. Cir. 2018) ("We have held that patent eligibility can be determined at the Rule 12(b)(6) stage….This is true only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law.")

It is well-settled that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." Alice Corp. Pty. Ltd. v. CLS Bank Int'l., 134 S. Ct. 2347, 2354 (2014) (quoting Ass'n for Molecular Pathology v. Myriad Genetics, Inc., 133 S. Ct. 2107, 2116 (2013)). An invention, however, "is not rendered ineligible for patent simply because it involves an abstract concept." Id. There is an exception under § 101 for patents that apply an abstract concept "to a new and useful end." Id. (quoting Gottschalk v. Benson, 409 U.S. 63, 67 (1972)).

The unanimous Supreme Court decision in Alice provided a two-part analysis for determining whether the application of an abstract idea would be patent-eligible: (1) "whether the claims at issue are directed to one of those patent-ineligible concepts;" and (2) "whether the additional elements [of a claim] 'transform the nature of the claim' into a patent-eligible application." Id. at 2355 (quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc., 132 S. Ct. 1289, 1294 (2012). The first stage of the Alice inquiry looks "at the 'focus' of the claims" and their " 'character as a whole.' " Elec. Power Grp., LLC v. Alstom S.A., 830 F.3d 1350, 1353 (Fed. Cir. 2016) (citing Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1335–36 (Fed. Cir. 2016). When reached, the second stage inquiry looks "more precisely at what the claim elements add—specifically, whether, in the Supreme Court's terms, they identify an " 'inventive concept' " in the application of the ineligible matter to which (by assumption at stage two) the claim is directed." Id. at 1353 (internal citations omitted).

7

## A. First <u>Alice</u> Step: "Directed To" a Patent-Ineligible Concept

The first part of a patentability analysis under <u>Alice</u> requires the Court to "determine whether the claims as a whole are directed to an abstract idea." <u>Alice</u>, 134 S. Ct. at 2355. Procon argues that the claims in the '598 Patent "are directed to the abstract idea of managing an inventory" and that "[b]usiness practices designated to manage inventory—and particularly a vehicle inventory for a dealer—have existed for several decades." (ECF No. 41 at PageID 1336.) In response, Spireon asserts that "the '598 Patent does not address management of just <u>any</u> 'inventory;' it addresses management of a 'vehicle inventory.'" (ECF No. 45 at PageID 2501 (internal citations omitted) (emphasis in original).) Spireon also stresses that the '598 Patent is not directed to generic inventory management, but specifically inventory management for a dealer using sets of available location devices owned by the dealer. (<u>Id.</u> at PageID 2501.) The Court finds Spireon's arguments unconvincing and finds that the claims in the '598 Patent are directed to the abstract idea of vehicle inventory management.

### *Managing a Vehicle Inventory is an Abstract Idea*

Abstract ideas have long been deemed patent-ineligible because "no one can claim in . . . them an exclusive right." <u>Alice</u>, 134 S. Ct. at 2355 (quoting <u>Le Roy v. Tatham</u>, 55 U.S. (14 How.) 156, 175 (1853)). In recent years, the Federal Circuit has further clarified what constitutes an abstract idea by focusing on the presence of a "technological improvement." <u>See</u> <u>In re TLI Communications LLC Patent Litigation</u>, 823 F.3d 607, 612 (Fed. Cir. 2016) ("We recently clarified that a relevant inquiry at step one is 'to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea.") (citing <u>Enfish, LLC v. Microsoft Corp.</u>, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (contrasting claims "directed to an improvement in the functioning of a computer" with claims "simply adding conventional computer

components to well-known business practices.")).

Accordingly, the inquiry in front of this court is whether the '598 Patent simply adds conventional computer components to the field of vehicle inventory management, or is instead directed to the improvement in the functioning of a computer. See, e.g., Simil, LLC v. Flexsim Software Products, Inc., 983 F.3d 1353, 1360–61 (Fed. Cir. 2020) ("To be sure, 'software can make patent-eligible improvements to computer technology, and related claims are eligible as long as they are directed to **non-abstract improvements to the functionality of a computer**…itself.'") (internal citation omitted).

Procon argues that the purported advance of the '598 Patent is a "process of manipulating information of a specified content—gathering, storing, transmitting, receiving, and presenting information about a vehicle—and not any particularly assertedly inventive technology for performing those functions." (ECF No. 41 at PageID 1340.) To support this contention, Procon points to the abstract of the '598 Patent, which recites that "the inventory management system may be configured to: (1) track whether the location device is located within a predetermined perimeter; (2) provide current inventory and ownership status associated the location device; and/or (3) place the location device in a sleep and/or passive state with periodic check-ins." '598 Patent at Abstract. Plaintiffs further add that "the generically claimed location device could be used to carry out the same steps to manage an inventory of anything—trailers, shipping containers, construction equipment, etc." (ECF No. 41 at PageID 1342.)

Spireon instead focuses on the "owned by the dealer" portions of the claims, arguing that that this language "remains a key component and a significant aspect of claim 1 which shows that the claims of the '598 Patent go to a particular method of 'managing a dealer's inventory,' well beyond the abstract 'managing an inventory.'" (ECF No. 45 at PageID 2503.) Spireon stresses

9

the importance of managing inventory *for a dealer* repeatedly in its briefing, noting that the "claims of the '598 Patent are not directed to the generic 'managing an inventory' but are specific steps of a particular method of managing 'a vehicle inventory for a dealer.'" (See generally id. at PageID 2501–502.) This argument fails. The Supreme Court and the Federal Circuit "have repeatedly made clear that merely limiting the field of use of the abstract idea to a particular existing technology environment does not render the claims any less abstract." Affinity Labs of Texas, LLC v. DIRECTV, LLC, 838 F.3d 1253, 1259 (Fed. Cir. 2016).

The Federal Circuit's recent decision in cXLoyalty, Inc. is also informative here. In cXLoyalty, Inc. v. Maritz Holdings Inc., the Federal Circuit held both the original and substitute patent claims of U.S. Patent 7,134,087 (the "'087 Patent") to be ineligible under § 101. 986 F.3d 1367 (Fed. Cir. 2021). The '087 Patent was directed towards "a system and method for permitting a customer of a loyalty program to redeem loyalty points for rewards offered by vendors without the need for human intervention." (Id.) At step one, the Federal Circuit agreed that the '087 Patent was directed to "facilitating, or brokering, a commercial transaction (i.e., the sale and purchase of goods and services) between a purchaser using a first form of value (i.e., a rewards program participant using points in whole or in in part) and a seller transacting in a second form of value (i.e., a vendor system which transacts purchases in currency)." Id. at 1376–77 (internal citations and quotations omitted). The court added that "[h]umans have long intermediated these very transactions by collecting and relaying the very same information." Because the claims in the '087 Patent were "directed to transfers of information relating to a longstanding commercial practice," the Federal Circuit in cXLoyalty found that they were directed to patent-ineligible subject matter under step 1 of Alice. Id. at 1377.

Here, the claims of the '598 Patent are not different from the conventional business

10

practices or transfers of data that the Federal Circuit has found to lack muster under <u>Alice</u> step 1. For example, in <u>Electric Communication Technologies</u>, the court found that the functions of "monitoring the location of a mobile thing and notifying a party in advance of arrival of that mobile thing" amounted to "nothing more than the fundamental business practice of providing advance notification of the pickup or delivery of a mobile thing." <u>Elec. Comm. Techs., LLC v. Shopperschoice.com, LLC</u>, 958 F.3d 1178, 1181 (Fed. Cir. 2020). It further restated the lower court's findings that "business practices designed to advise customers of the status of delivery of their goods have existed at least for several decades, if not longer." <u>Id.</u> at 1181 (internal citations and quotations omitted); <u>see</u> <u>also</u> <u>Elec. Power Grp.</u>, 830 F.3d 1350, 1353 (Fed. Cir. 2016) ("The focus of the asserted claims…is on collecting information, analyzing it, and displaying certain results of the collection and analysis…and hence require stage-two analysis under § 101.")

Furthermore, "[t]he test for patent-eligible subject matter is not whether the claims are advantageous over the previous method." <u>Tenstreet, LLC v. DriverReach, LLC</u>, 826 F. App'x 925, 926 (Fed. Cir. 2020). In <u>Tenstreet</u>, the Federal Circuit ruled that even if the patent at issue "provide[d] advantages over manual collection of the data, the patent claim[ed] no technological improvement beyond the use of a generic computer network." <u>Id.</u> at 926. Here, the '598 Patent purports to "transmit the physical location of the device, relative location information such as whether inside or outside a geo-fence, information about vehicle speed, cornering, braking, and/or acceleration, information corresponding to an impact, information about airbag status, and the like." '598 Patent, col. 7, l. 25–30. Notably, such "location device may be an **off-the-shelf** tracking device for a vehicle, for example for use by an end user, for user-based insurance, for fleet management, for managing driver behavior, and/or the like." <u>Id.</u>, col 8, l. 24–27. Spireon does not contend that it has invented an improvement in the location device, and instead focuses

on the presence of "specific steps of a particular method[.]" (ECF No. 45 at PageID 2503.) This argument fails at step 1, because the claims are nonetheless directed to the gathering and sharing of information. Such "claims focused on 'collecting information, analyzing it, and displaying certain results of the collection and analysis' are directed to an abstract idea." Elec. Power Grp., 830 F.3d at 1355.

The '598 Patent is directed to tasks inherent to the business practice and process of vehicle inventory management that have been available as long as the existence of car dealerships. Therefore, it is directed to an abstract idea under step 1 of Alice.

## B. Second Alice Step: Transforming the Nature of the Claim Into a Patent-Eligible Application

Having found that the '598 Patent is directed to the abstract idea of vehicular inventory management, the Court moves on to stage 2 of the Alice analysis. At this stage, the Court must consider the "transformative" aspects of the claims and whether they are inventive so as to make the patent eligible under § 101. See Alice, 134 S. Ct. at 2355. A claim's elements, taken both individually and in concert as an ordered combination, must be "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." Id. (quoting Mayo, 132 S. Ct. at 1294) (alteration in original); see also Mayo, 132 S. Ct. at 1297 ("If a law of nature is not patentable, then neither is a process reciting a law of nature, unless that process has additional features that provide practical assurance that the process is more than a drafting effort designed to monopolize the law of nature itself."). "An inventive concept reflects something more than the application of an abstract idea using well-understood, routine, and conventional activities previously known to the industry." Cellspin Soft, Inc. v. Fitbit, Inc., 927 F.3d 1306, 1316 (Fed. Cir. 2019) (internal quotation marks omitted).

### 1. The '598 Patent Does Not Provide a Technological Solution

Procon argues that "Spireon's contention that the '598 [P]atent 'provide[s] a unique, undisclosed, and unconventional solution in the industry'[] merely points to claim language reciting high level functions of transmitting, receiving, associating, disassociating, and determining." (ECF No. 63 at PageID 2698.)  Procon further argues that the "claim limitations Spireon quotes (and even the specification) *fail to provide useful guidance as to how to achieve these purported functions*" and instead "recite the desired result rather than a specific way to accomplish that result[.]"  (Id.) (emphasis in original).

Indeed, the Federal Circuit has increasingly focused on *how* a technological solution is achieved.  For example, in cXLoyalty, Inc., the Federal Circuit ruled that a patent directed to "format conversion" did not "improve[] the use of computers as a tool by reciting a new way for computers to conduct format conversion," and added that the claims failed to "provide any guidance as to how this purported function [was] achieved."  cXLoyalty, 986 F.3d at 1379. Accordingly, the Federal Circuit rejected the patent under § 101, stating that it did not "claim a patent-eligible technological solution to a technological problem."  Id.

The focus of Federal Circuit jurisprudence in recent years has emphasized technical details and useful guidance in functionally claimed patents.  See, e.g., Univ. of Fla. Res. Found., Inc. v. Gen. Elec. Co., 916 F.3d 1363, 1368–69 (Fed. Cir. 2019) ("[N]either the '251 patent, nor its claims, explains *how* the drivers do the conversion that UFRF points to.  That is, the drivers are described in purely *functional* terms: they 'facilitate data exchanges,' 'convert received data streams to a format independent of any particular bedside machine,' 'translate the data stream,' 'interpret data streams,' 'facilitate communications with the bedside machine,' and 'interpret [discrete] segments' in a 'data stream for the machine.'") (emphasis in original) (citations omitted); Adaptive

13

Streaming, Inc. v. Netflix, Inc., 836 F. App'x 900, 903 (Fed. Cir. 2020) ("The focus is not any specific advance in coding or other techniques for implementing that idea; no such specific technique is required."); Affinity Labs of Texas, 838 F.3d at 1258 ("There is nothing in claim 1 that is directed to *how* to implement out-of-region broadcasting on a cellular telephone. Rather, the claim is drawn to the idea itself.").

Here, the Court is unconvinced by Spireon's argument that "the claims of the '598 Patent recite specific methods for managing vehicle inventory for a dealer using a location device in a specific way that allows dealers to associate and disassociate the location devices with and from groups of the location devices that are owned by the dealer and that the dealer may communicatively couple with the dealer's vehicles." (ECF No. 45 at PageID 2504.) For one, the '598 Patent merely describes the *functions* of associating, disassociating, and communicative coupling, without providing *how* those functions are achieved. See, e.g., '598 Patent at col. 7, l. 44–60 ("The location device may be configured to communicatively couple with a vehicle, such as via the vehicle's on-board diagnostic interface (e.g., OBD-II)…The location device may comprise one or more sensors…Further, the location device may be configured to determine a state, voltage, and/or current of the vehicle battery, to determine a state, voltage, and/or current of the vehicle battery, to determine if the location device is connected…The location device may comprise a memory and may be configured to store sensed, received, or otherwise determined data.").

At the § 101 Motion hearing, the Court repeatedly gave Spireon's counsel the opportunity to identify any disclosures in the '598 Patent that go beyond functional language and explain *how* the functions are achieved. See Hearing Tr. at 24:7–22 ("They are concrete and tangible steps that are performed by the location device, which include communicative coupling of the device to the

14

vehicle through the OBD port and concrete steps that occur in response to cumulative coupling of that location device.…There are a specific series of steps that outline a specific process of connecting the device to the vehicle, the device sending the connection notice, including the vehicle identifier, and the location device identifier…certain steps being taken to associate that device with the vehicle in the memory.") Spireon's counsel stated that "almost every limitation of the claim recites a concrete step where the location device performs a *specific* action or that something happens in response to the *specific* action being performed by the location device.…These are *specific* steps that involve the hardware doing *specific* things." Hearing Tr. at 25:17–24 (emphasis added). But simply repeating the word specific does not change the disclosure of the '598 Patent. Despite using terms such as "associating," "disassociating," "connection notice," and "communicative coupling," these steps do not actually disclose how the result is achieved. The '598 Patent does not disclose the parameters, coding language, or otherwise tell the user how to manage the vehicle inventory—it merely provides functional language for doing so. "[T]he claims provide no useful guidance as to how this purported function is achieved and thus cannot be directed to a technological solution." cXLoyalty, Inc. v. Maritz Holdings, Inc., 986 F.3d at 1378. Accordingly, the '598 Patent does not pass muster under step 2 of Alice because it does not provide technological solution. Next, the Court addresses whether the methods utilized were routine and conventional at the time of the patent.

### 2. The '598 Patent Utilizes Routine and Conventional Methods and No Factual Disputes Preclude Finding the '598 Patent to be Ineligible Under § 101

In addition to not providing sufficient disclosure on *how* to achieve the functional results highlighted in the '598 Patent, Spireon also relies on routine and conventional methods for doing so. A claim that "contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application.… must include 'additional features' to ensure 'that the

15

[claim] is more than a drafting effort designed to monopolize the [abstract idea]." <u>Alice</u>, 134 S. Ct. at 2357 (quoting <u>Mayo</u>, 132 S. Ct. at 1289). A claim whose recited elements are all "generic computer elements," does not contain an inventive concept. <u>Intellectual Ventures I LLC v. Capital One Bank (USA)</u>, 792 F.3d 1363, 1368 (Fed. Cir. 2015) (providing "a database, a user profile . . . and a communication medium" as examples of generic computer elements).

Procon argues that "[a]ll the claims implement routine, conventional, and well-understood methods of dealer inventory management using conventional computer hardware." (ECF No. 41 at PageID 1344.) According to Procon, the '598 Patent merely recites advancements in technology that have resulted in increased efficiency, speed, or accuracy in vehicle inventory management, but that "the core methods—which can still be carried out by humans, at times with the help of pencil and paper—have not changed." (<u>Id.</u>) In response, Spireon argues that "Procon has not demonstrated that a 'conventional' location device would transmit a connection notice including a location device identifier and a vehicle identifier in response to the location device being communicatively coupled with a vehicle," or that "a generic computer would associate a location device with a dealer's group of available location devices that are owned by the dealer or with one of the dealer's vehicles." (ECF No. 45 at PageID 2505.) The '598 Patent's specification however, is instructive, noting that "[t]he location device may comprise any suitable system for determining a physical location of the location device and communicating the position to the inventory management system." '598 Patent at col. 6, l. 54–58. It goes on to say that this location device "may comprise a GPS receiver, Wi-Fi positioning system, space based augmentation system (SBAS) such as WAAS/EGNOS/MSAS/GAGAN, and/or the like to facilitate determining the

16

physical location of the location device." Id. at col. 6, l. 58–62. These are all existing, off-the-shelf devices that have inherent functionality.

The Federal Circuit has rejected this sort of disclosure before. In In re TLI Communications, the Federal Circuit ruled that the "specification [did] not describe a new telephone, a new server, or a new physical combination of the two" and that "the telephone unit itself [was] merely a conduit for the abstract idea of classifying an image and storing the image based on its classification." 823 F.3d at 612. Here, the location device is merely a conduit for the abstract idea of vehicle inventory management.

Furthermore, Spireon's attempt to create a factual dispute with respect to what was "routine and conventional" at the time of the invention fails. It necessarily follows that if the '598 Patent does not disclose the exact how to achieve the end result, then the person having ordinary skill in the art ("PHOSITA") would be left to his own devices in order to utilize routine and conventional methods to achieve those results. Either the '598 Patent adequately discloses *how* to achieve the functional results (it does not), or they are routine and conventional such that a PHOSITA would be able to determine them. Both cannot be true. As stated by Procon, "the patent describes what the off-the-shelf location device should be configured to do with no disclosure as to how to configure the device." (ECF No. 46 at PageID 2520.)

In Ubisoft Entertainment, the Federal Circuit found that a claimed invention pertaining to guitar instrumentation techniques "involve[d] merely the application of conventional computer technology to common guitar instruction techniques," which "cannot transform the nature of the asserted claims into patent-eligible applications of the abstract idea." Ubisoft Ent., S.A., v. Yousician Oy, 814 F. App'x 588, 592 (Fed. Cir. 2020) (internal citations omitted). Similarly, this Court reiterates the Federal Circuit's findings in Electric Power: "Nothing in the claims,

understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology gathering, sending, and presenting the desired information."  830 F.3d at 1355.  The Court finds that the '598 Patent does nothing more than recite routine and conventional steps using off-the-shelf components.  Accordingly, it does not pass muster under step 2 of <u>Alice</u>.

## IV.    CONCLUSION

Applying the two-part <u>Alice</u> test, the Court finds that the '598 Patent is directed to an abstract idea, and does not recite an inventive step so as to transform it to patent-eligible subject matter.  Furthermore, the Court finds that there are no material facts in dispute that would preclude this finding of invalidity.  Procon's Motion for Judgment on the Pleadings is **GRANTED**.

**IT IS SO ORDERED**, this 6th day of April, 2021.


/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE